# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| L.W., a minor, by her parent and next friend BRIDGETT J., and BRIDGETT J., <br><br>Plaintiffs, <br><br>v. <br><br>ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, et al., <br><br>Defendants. | No. 13 CV 8463 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs L.W., a minor, and her mother, Bridgett J., sued the Illinois Department of Children and Family Services (DCFS), its then-acting director, and several of its employees after the employees temporarily removed L.W. from Bridgett's care and designated Bridgett as a perpetrator of child neglect in the agency's central register. On defendants' motion, the court dismissed from the litigation one of the employee defendants, Maria Miller, on the ground of quasi-judicial immunity. The court also dismissed Counts V and VI of the complaint, which alleged violations of Bridgett's rights under the Americans with Disabilities Act and the Rehabilitation Act, respectively. DCFS and the DCFS director were terminated as parties to the case. Plaintiffs moved for reconsideration of the ruling on the ADA and Rehabilitation Act claims, seeking also the reinstatement of DCFS and the DCFS director as defendants. For the reasons discussed below, plaintiffs' motion is granted.

## I. Background

Plaintiffs' allegations are set forth in the court's original ruling, [43][1], and are not reiterated in detail here. However, for the purpose of resolving the present motion, a brief review is helpful.

In July 2012, L.W. was a toddler living under the care of her mother, Bridgett J., a substitute teacher and licensed social worker. On July 17, DCFS received a hotline call in which the caller alleged that Bridgett suffered from paranoid schizophrenia, was not taking her medication, and was putting L.W. in danger. In response to the call, DCFS sent an investigator to Bridgett's home. The investigator spoke with Bridgett and her family. Bridgett told the investigator she had never been diagnosed with schizophrenia; her family, though, said that Bridgett had been behaving bizarrely. After the home visit, DCFS removed L.W. from Bridgett's care pursuant to the Illinois Abused and Neglected Child Reporting Act. After a few weeks, DCFS permitted Bridgett to have supervised contact with L.W.; but Bridgett did not regain full custody of her daughter until April 2013.

In the interim, DCFS investigators determined that Bridgett should be "indicated" in their central register as a perpetrator of child neglect. This determination was made pursuant to Allegation 60 of the DCFS regulatory code—a portion of the code that the Illinois courts have declared void *ab initio*. Bridgett appealed the "indicated" finding, which was ultimately reversed and expunged from

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings.

the register by an administrative law judge. In the meantime, however, Bridgett was forced to take a leave of absence from her job as a substitute teacher.

Alleging a variety of constitutional violations, Bridgett and L.W. sued the DCFS employees responsible for removing L.W. from Bridgett's custody, and for "indicating" Bridgett as a perpetrator of child neglect. Bridgett also sued the same employees in their official capacities, as well as DCFS and its then-acting director (also in their official capacities), for violating Title II of the ADA (Count V) and Section 504 of the Rehabilitation Act (Count VI). Bridgett claimed that DCFS had erroneously believed she was suffering from schizophrenia, a "disability" under both Acts, and had discriminated against her on the basis of that perceived disability. Defendants' motion to dismiss Counts V and VI was granted, and plaintiffs moved for reconsideration.

## II. Analysis

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similar to the ADA, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). In ruling on defendants' motion to dismiss, the court equated the causation

3

standard for the ADA with the causation standard appearing in the Rehabilitation Act, and held that Bridgett's claim failed under the latter (and thus the former) statute. *See* [43] at 32–34. Plaintiffs argue that the ADA causation standard is not as stringent as the Rehabilitation Act standard, and so the court erred in treating the two as equivalent. *See* [44] at 6–8.

Plaintiffs are correct that, on its face, Title II of the ADA differs from its Section 504 counterpart. Title II requires only that plaintiffs prove discrimination "by reason of [their] disability," 42 U.S.C. § 12132, while Section 504 of the Rehabilitation Act requires that plaintiffs prove discrimination "*solely* by reason of [their] disability," 29 U.S.C. § 794(a) (emphasis added); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013) (noting that the "solely by reason of" standard of causation is "unique to [the Rehabilitation Act] and [is] not present in the ADA" (citing *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 845 n. 6 (7th Cir. 1999))). Plaintiffs urge that the practical consequence of this distinction is that, while individuals alleging a Section 504 violation must prove that their disability was the sole reason for the alleged discrimination, those alleging ADA violations must prove only that their disability (or their perceived disability, as in this case) was "a motiving cause" of that discrimination. *See* [44] at 7 (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461–62 (4th Cir. 2012)). The motivating-cause standard is not the governing standard in this circuit.

Motivating-cause or motivating-factor claims arose in the Title VII context, where plaintiffs alleged that their race, color, religion, sex, or national origin had

4

played "a motivating part" in an adverse employment decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173–74 (2009). After the Supreme Court determined that employers could avoid Title VII liability by proving that they would have made the same decision, even if they had not taken into account the plaintiff's protected status, Congress amended the statue to explicitly permit recovery where an improper consideration was only "a motivating factor" in the adverse employment action. *See id.* at 174 (discussing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989); 42 U.S.C. § 2000e-2(m)). Where, however, Congress had not amended the statutory language to include such mixed-motive phraseology, the Court determined that a but-for causation standard would apply. If, for example, the statute required that a plaintiff show discrimination "because of" or "by reason of" a particular characteristic, *see id.* at 176 (explaining that "because of" means "by reason of"), then the plaintiff must establish that, but for that characteristic, the defendant would not have acted as they did, *see id.* (discussing causation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*) (citations omitted).

The ADA requires proof of discrimination "by reason of" the plaintiff's disability, and in the this circuit, it is the but-for causation standard—not the motivating-factor standard—that applies to Titles I and II of that statute. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010) ("There is no provision in the governing version of the ADA akin to Title VII's mixed-motive provision.") (citations omitted); *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006); *see also Burrage v. United States*, 134

5

S.Ct. 881, 889 (2014). Thus, to prevail on her ADA claim here, Bridgett must demonstrate that, but for DCFS's perception that Bridgett suffered from paranoid schizophrenia, DCFS would not have interfered with her custody of L.W. or have "indicated" Bridgett for child neglect. But this is not to say that any decision ultimately ascribable to Bridgett's (perceived) disability is foundation enough for an ADA claim. Bridgett must show that her disability was the "immediate cause" of DCFS's actions. *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) ("[W]e have never held that *mere* 'but for' causation is sufficient under the ADA . . . ." (citing *Despears v. Milwaukee Cnty.*, 63 F.3d 635, 636 (7th Cir. 1995); *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 933–34 (7th Cir. 1995))) (emphasis added); *cf. Wis. Cmty. Servs.*, 465 F.3d at 752 (requiring in Title II modification cases a "showing that *the* reason for [the plaintiff's] deprivation is his disability") (emphasis added).

Accordingly, while Title II of the ADA and Section 504 of the Rehabilitation Act differ somewhat in their wording, claims under the respective statutes are "functionally identical," *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). To succeed on either claim, Bridgett must establish: (1) that she is a qualified individual with a disability; and (2) that, because of her disability, she was denied the benefits of a program or activity of a public entity[2], or was otherwise subjected to discrimination, *see* 29 U.S.C. § 794(a); 42 U.S.C. § 12132. ("Because of her disability," as just

---

[2] The Rehabilitation Act also requires that the public entity receive federal funding. *See* 29 U.S.C. § 794(a). Plaintiffs have satisfied this requirement. *See* [43] at 33 n. 17.

6

explained, means that the disability was the immediate cause of the discrimination or denial of benefits.)

There is no dispute that paranoid schizophrenia is a disability within the meaning of either Act, and defendants do not argue that Bridgett is not a "qualified individual" as required by both statutes. At the motion-to-dismiss stage, I assume to be true Bridgett's allegation that defendants perceived her to suffer from paranoid schizophrenia when they "indicated" her as a perpetrator of child neglect and removed L.W. from her care. Being perceived as having a disability is the same as having a disability under both the ADA and Rehabilitation Act. *See* 42 U.S.C. § 12102(1)(C) (defining "disability" to include "being regarded as having such an impairment"); 29 U.S.C. § 705(20)(B) (adopting the meaning of "individual with a disability" as defined in 42 U.S.C. § 12102). The question that must be answered here, then, is whether Bridgett has adequately alleged discrimination because of her disability.

In resolving defendants' motion to dismiss, I concluded that Bridgett's complaint had not satisfied the causation requirement because it alleged that defendants had decided to "indicate" Bridgett, and to remove L.W. from her custody, not just because defendants thought Bridgett was suffering from schizophrenia, but because of reports that she was acting "bizarrely" and was posing a threat to her child's safety. *See* [43] at 32, 34–35. If defendants acted on a reasonable belief that Bridgett was indeed acting strangely, and that her behavior was indeed endangering L.W., then—even if defendants also believed that this behavior was a

manifestation of Bridgett's (perceived) illness—Bridgett's discrimination claim would not be viable. The claim would not be viable because, even though defendants' actions would be traceable to Bridgett's perceived disability, the perceived disability would not have been the *immediate* cause of those actions. The immediate cause would instead have been a reasonable belief that L.W.'s safety was at risk.

Plaintiffs argue in support of their motion for reconsideration that what they alleged in their complaint was not that DCFS justifiably believed Bridgett was endangering her child; instead, say plaintiffs, they alleged that DCFS thought Bridgett was *necessarily* putting L.W. at risk just because she had (or because defendants thought she had) schizophrenia. *See* [44] at 8–10. If this is what plaintiffs alleged, plaintiffs have pleaded discrimination "solely by reason of" (and thus "by reason of") Bridgett's perceived disability, and so have stated a claim under both the ADA and Rehabilitation Act. But is this what plaintiffs actually alleged? Plaintiffs stated in their complaint that the grounds for taking L.W. away from Bridgett, and for indicating her in the central register, were: (1) "allegations of schizophrenia, allegations of related 'bizarre' behavior, and Bridgett J.'s past history of mental health treatment for depression," [1] ¶ 48; and (2) the "assertion that Bridgett J.'s mental health posed a threat to L.W.'s safety," *id.* ¶ 75. The inference that plaintiffs now urge the court to draw from these statements—*i.e.*, that defendants simply assumed Bridgett's purported disability was endangering her child's welfare—is perhaps not the most direct interpretation, but, in light of

other statements in the complaint, it is at least a plausible one. *See, e.g., id.* ¶ 49 (alleging that "[t]here was no credible evidence that Bridgett J. had abused or neglected L.W. or was imminently about to do so"); *id.* ¶ 75 (similar). Thus, plaintiffs have adequately stated a claim for discrimination under Title II of the ADA or Section 504 of the Rehabilitation Act.

Which leaves the question of sovereign immunity. The defendants to Counts V and VI of the complaint are sued in their official capacities. The claims against these defendants—a state agency (DCFS) and some of its officials (the DCFS director and several investigators)—are therefore considered claims against Illinois, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991), and Eleventh Amendment immunity may apply. As explained in the court's earlier order, Illinois has waived its immunity from suit under the Rehabilitation Act in exchange for federal funds. *See* [43] at 34 (citing *Jaros*, 684 F.3d at 672 n. 5). But Illinois has not consented to suit under Title II of the ADA, and with respect to that statute, the court's earlier order stated that Congress had abrogated the states' immunity from suit only to the extent that plaintiffs seek relief for conduct that also violates the Fourteenth Amendment. *See id.* at 30–31. This is not quite right. Congress has indeed abrogated sovereign immunity under Title II when the conduct at issue also violated the plaintiff's Fourteenth Amendment rights; but, as plaintiffs note in their present motion, "insofar as [the alleged] misconduct violated Title II but did *not* violate the Fourteenth Amendment," it is for the district court to determine whether Congress's purported abrogation of immunity is nonetheless valid "as to that class of conduct."

9

*United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis added). I need not undertake such an inquiry here, however, because the conduct that plaintiffs say violated Title II, if it occurred, also violated Bridgett's Fourteenth Amendment rights.

Plaintiffs first allege that defendants wrongfully discriminated against Bridgett when they decided to restrict her parental rights because of her disability. *See* [1] ¶¶ 118, 127. As explained in the court's prior order, a family's right to remain together without state interference is an aspect of substantive due process. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011). This right may be limited where the state has a reasonable suspicion that the child has been abused or is in imminent danger of abuse. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000). If, as plaintiffs here allege, DCFS suspected L.W. was in imminent danger of abuse simply because her mother was disabled, this, without more, would not lay a foundation for a reasonable suspicion of abuse or imminent abuse. If defendants decided to remove L.W. on such a basis, or if they elected to continue restricting Bridgett's custody on such a ground, then defendants violated Bridgett's Fourteenth Amendment rights.

Plaintiffs also allege that defendants discriminated against Bridgett when, on account of her disability, they "indicated" her as a perpetrator of child neglect and, as a result, deprived her of her protected liberty interest in being able to pursue her occupation of choice (working with children). *See* [1] ¶¶ 118, 127. As noted in the earlier order, procedural due process provides that, before a DCFS employee may

10

indicate someone in the central register, the employee must consider all available evidence tending to show whether or not abuse or neglect has occurred. *See Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1008 (7th Cir. 2012); *Dupuy v. Samuels*, 397 F.3d 493, 506 (7th Cir. 2005). If what plaintiffs assert here is true— *i.e.*, that DCFS employees chose to indicate Bridgett just because she was (perceived to be) suffering from schizophrenia, while ignoring the fact that there were no indicia of actual abuse or neglect—then defendants did not consider all available evidence concerning the presence or absence of neglect, and plaintiffs have alleged a Fourteenth Amendment violation on this basis, as well.[3]

Finally, plaintiffs contend that defendants discriminated against Bridgett by "maintaining and enforcing a void allegation that authorized discrimination against [disabled] persons . . . by declaring them to be neglectful *per se*." [1] ¶ 128; *see also id.* ¶ 119 (similar). The referenced "allegation" is Allegation 60, one of a series of numbered allegations in the Illinois regulatory code that describe specific incidents of harm to a child. *See* 89 Ill. Admin. Code § 300 App. B. Allegation 60 asserts that the child's environment is injurious to her health and welfare. *See id.* That Allegation 60 may have been void under Illinois law is neither here nor there, since, as explained in the court's earlier order, whether a defendant violated state law does not speak to whether they violated federal law. As to whether defendants' use of Allegation 60 may have violated Bridgett's Fourteenth Amendment rights, the analysis is the same as that discussed above concerning the alleged interference

---

[3] Bridgett's separate due-process claims (substantive and procedural) both survived defendants' motion to dismiss. *See* [43] at 16–17, 22–24.

11

with Bridgett's protected interest in a career of her choice. What plaintiffs claim is discriminatory about Allegation 60—that it permitted defendants to indicate Bridgett "in the absence of any actual evidence of abuse or neglect," [52] at 7—is, at bottom, no different from plaintiffs' claim that DCFS employees violated Bridgett's due-process rights by indicating her without first considering all available evidence of abuse or neglect (including and especially the absence of any such evidence). In this sense, plaintiffs' claim of discrimination based on defendants' use of Allegation 60 also falls within the reach of the Fourteenth Amendment, and thus Congress has abrogated defendants' immunity as to that claim.

### III. Conclusion

For the reasons discussed above, defendants' motion for reconsideration, [44], is granted. The portion of the court's opinion dismissing Counts V and VI of the complaint is vacated. These counts remain in the case. DCFS and the DCFS director are reinstated as defendants.[4]

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/1/15

---

[4] Plaintiffs do not seek reinstatement of defendant Miller in her official capacity. *See* [44] at 1 n. 1. As a technical matter, plaintiffs need not seek reinstatement of DCFS or the DCFS director in their official capacities, since plaintiffs have also sued in an official capacity three DCFS employees who remain parties to the case, and, as noted above, the official-capacity suits are duplicative of one another. But, as defendants do not object to any redundancy, and as plaintiffs' motion for reconsideration is granted in substance, their request to reinstate as defendants DCFS and its director is also granted.